**HAVENS–TOBIAS et al., Appellants,**

v.

**SCHWAN'S SALES ENTERPRISE, INC., Appellee.**

[Cite as *Havens–Tobias v. Schwan's Sales Ent., Inc.*, 161 Ohio App.3d 461, 2005-Ohio-2753.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20895.

Decided June 3, 2005.

Jason David Fregeau, for appellants.

Tracy A. Cassinelli and Vincent P. Antaki, for appellee.

DONOVAN, Judge.

{¶ 1} Plaintiff-appellants, Christi Havens–Tobias and David Tobias, appeal from a judgment of the Montgomery County Court of Common Pleas granting a directed verdict in favor of appellee Schwan's Sales Enterprises, Inc. For the following reasons, the judgment of the trial court is affirmed.

I

{¶ 2} The following undisputed facts were adduced at trial held March 22, 2004.

{¶ 3} The Tobiases purchased food items from Schwan's, a company that delivers prepared meals and other food items to its customers' homes. Customers pay Schwan's drivers for the merchandise they purchase, sometimes leaving checks in the mailbox. Pursuant to this practice, the Tobiases wrote two checks to Schwan's, one on May 15, 1998, for $41.64 and one on May 28, 1998, for $61.68. Both checks were returned by the Tobiases' bank due to insufficient funds. Schwan's left a notice regarding the second check in the Tobiases' mailbox. The notice, dated June 26, 1998, provided:

{¶ 4} "Schwan's Sales Enterprises, Inc. would like to thank you for allowing our representative to come into your home with our products. We sincerely appreciate your business.

{¶ 5} "At this time, however, we need to inform you that your check number 1482, dated 5–28–98, in the amount of $41.64 has been returned to us by your

bank unpaid. We are sure this is an oversight and would appreciate your prompt attention to this matter.

{¶ 6} "Please send a money order in the amount of the check plus a $15.00 service fee to cover handling costs. Mail to the below address or give to our representative the next time he/she visits."

{¶ 7} Pursuant to this notice, the Tobiases procured a money order in the amount of $56.64, the amount of the second check and the $15 returned-check fee, and paged Schwan's driver to notify him that he could come pick up the money order. This page generated no response, and the money order was not picked up. Sometime between June 26 and August 6, 1998, the Tobiases attempted to hand the money order to the driver, and he refused to accept it. It appears from the allegations in the complaint that the Tobiases did not tender a money order to Schwan's for the amount of the first returned check and service fee, for which they had received no notice.

{¶ 8} On August 6, 1998, the Tobiases received a call from M&M and Associates, Inc. ("M&M"),[1] a collection agency to which Schwan's had assigned the Tobiases' debt for the purposes of collection. During this conversation and in a subsequent letter, M&M demanded that the Tobiases pay the amount of the two checks, a $20 returned-check fee for each check, and $150 in liquidated damages computed pursuant to R.C. 2307.61. The total amount demanded was $293.32. The letter stated that the Tobiases could be guilty of passing bad checks in violation of R.C. 2913.11 and that they had 30 days to pay the amount demanded. If they did not pay, the letter stated, M&M would retain an attorney and sue them to collect the money.

{¶ 9} The Tobiases contacted Schwan's sales manager to complain about M&M's tactics. They were informed by the sales manager that he did not care about the tactics because M&M "got results." He also told them that it did not matter that they had attempted to pay Schwan's driver or that the driver had refused to accept payment. He advised them not to contact Schwan's again. The Tobiases sent money orders to M&M to cover the amount of the checks plus a $15 service fee per check; but the money orders were returned marked "Void," and the Tobiases were advised that their offer was not satisfactory. Copies of these documents were faxed to Schwan's.

{¶ 10} The Tobiases retained legal counsel, who wrote to M&M regarding their collection practices on August 26, 1998. M&M retained Thomas Eagle as counsel. Eagle responded to the letter from the Tobiases' attorney on September 30, 1998. He demanded payment in the amount of $293.32 and attached a

---

1. M&M is owned by Kathy Moore, who was also named as a defendant in the Tobiases' state lawsuit. We will refer to M&M and Moore collectively as "M&M."

copy of the complaint that he intended to file on M&M's behalf if payment was not received. The complaint, which was eventually filed on October 9, 1998, alleged that the Tobiases had committed the offense of passing bad checks and asserted claims for breach of contract and unjust enrichment. The complaint demanded the amounts of the checks and returned-check fees, liquidated damages, and attorney fees, for a total of $493.32 plus interest. The case was eventually settled, with the Tobiases paying M&M $133.32, the face amounts of the two checks plus the $15 returned-check fees.

{¶ 11} In August 1999, the Tobiases filed suit against Schwan's, M&M, and Eagle in the United States District Court for the Southern District of Ohio, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), Section 1692 et seq., Title 15, U.S.Code, and the Ohio Consumer Sales Practices Act ("CSPA"), R.C. 1345.01, et seq., and common-law claims of abuse of process, invasion of privacy, defamation, fraud, and malicious prosecution. On May 18, 2000, the federal court dismissed the Tobiases' claim under the FDCPA for failure to state a claim upon which relief could be granted and declined to consider the state-law claims, dismissing them without prejudice.

{¶ 12} On March 20, 2001, the Tobiases filed suit in the Montgomery County Court of Common Pleas against the same defendants, alleging violations of the CSPA and common-law claims of abuse of process, invasion of privacy, defamation, and fraud. On April 19, 2001, Eagle filed a motion to dismiss for failure to state a claim upon which relief could be granted pursuant to Civ.R. 12(B)(6). The Tobiases filed a memorandum in opposition to the motion, and Eagle filed a reply memorandum. Prior to the trial court's decision on Eagle's motion, the Tobiases settled with M&M, and the claims against it were dismissed with prejudice. On July 12, 2001, the trial court granted Eagle's motion to dismiss and sent final appealable orders to the parties. The Tobiases appealed the trial court's decision to this court, and on August 31, 2001, we dismissed the appeal for lack of a final appealable order because the claims against Schwan's were still pending before the trial court.

{¶ 13} Schwan's filed a motion to dismiss under Civ.R. 12(B)(6) on July 18, 2001. On July 25, 2001, Schwan's filed a motion for summary judgment, arguing that the dismissal of the claims against M&M warranted the granting of summary judgment in favor of Schwan's. The Tobiases filed memoranda in opposition to both motions, and Schwan's filed reply memoranda. On September 12, 2002, the trial court granted Schwan's motion for summary judgment and disposed of all the issues raised by the motion to dismiss and the motion for summary judgment. The trial court decided against Schwan's on the issue raised in its motion for summary judgment (that summary judgment was proper because the claims against M&M had been dismissed) but decided in favor of

Schwan's on the argument raised in its motion to dismiss (that the Tobiases had failed to state a claim upon which relief could be granted).

{¶ 14} The Tobiases appealed the judgment, and in *Havens–Tobias v. Eagle* (March 28, 2003), Montgomery App. No. 19562, 2003 WL 1601461, we affirmed the decision of the trial court with respect to its dismissal of the Tobiases' claims against Eagle. We also stated that because the Tobiases had settled their claims against M&M, Schwan's could not be held vicariously liable for M&M's actions concerning the collection of payment on the dishonored checks.

{¶ 15} With respect to the trial court's dismissal of the Tobiases' CSPA claim against Schwan's, we reversed. In so doing, we held that, accepting the facts alleged in the Tobiases' complaint to be true, reasonable minds could conclude that Schwan's actions violated the CSPA, and thus, dismissal of that claim under Civ.R. 12(B)(6) was inappropriate.

{¶ 16} On March 22, 2004, a trial was held to determine the Tobiases' remaining claim against Schwan's for its alleged violation of the CSPA. At the close of the Tobiases' case in chief, the trial court granted a motion for directed verdict in favor of Schwan's. The trial court held that the Tobiases had failed to present any evidence that would convince a reasonable jury that Schwan's had violated the CSPA.

{¶ 17} It is from this judgment that the Tobiases now appeal.

## II

{¶ 18} The Tobiases' sole assignment is as follows:

{¶ 19} "A reasonable jury could find that defendant unfairly refused payment in full and knew that the refusal would lead to wrongful accusations of criminal conduct."

{¶ 20} In their only assignment of error, the Tobiases allege that the trial court erred when it granted Schwan's motion for directed verdict at the close of appellant's case. The Tobiases contend that based on the facts presented at trial, reasonable minds could find that Schwan's violated the CSPA when it assigned the debt to M&M while the Tobiases attempted to provide payment for the unpaid checks.

{¶ 21} The Tobiases advance numerous arguments in support of their contention that the trial court erred when it granted Schwan's motion for directed verdict. First, the Tobiases assert that Schwan's violated the CSPA when it refused to accept "payment in full" of the May 28, 1998, check and returned-check fee. The Tobiases also argue that Schwan's violated the CSPA by failing to advise them that the May 15, 1998 check had been returned for insufficient funds.

The Tobiases' remaining arguments focus on Schwan's assignment of the dishonored checks to M&M, as well as Schwan's failure to exercise control over M&M with respect to its collection tactics.

{¶ 22} In the first appeal, we stated unequivocally that since the Tobiases settled their claims with M&M, Schwan's cannot be held liable for *any* of the actions taken by M&M with respect to collection of the dishonored checks. Thus, the arguments that the Tobiases continue to advance concerning Schwan's alleged culpability for M&M's collection tactics are without merit and will not be discussed further.

{¶ 23} Moreover, the Tobiases attempt to mischaracterize our holding in *Havens–Tobias v. Eagle* when they make the blanket assertion that we held that "a jury could find these practices [by Schwan's] were unfair, deceptive, or unconscionable." Stated in this manner, the assertion attempts to remove our previous holding from the context in which it was originally made. Viewing the complaint under a Civ.R. 12(B)(6) standard, we stated that if all the allegations in the Tobiases' complaint were read as true, reasonable minds could conclude that Schwan's actions violated the CSPA, and thus dismissal of that claim was inappropriate. The Tobiases had the burden of presenting evidence at trial to support their claim that Schwan's violated the CSPA. At trial, however, the Tobiases were not entitled to rely on the unsworn allegations made in their complaint. Instead, the Tobiases were required to put forward some probative evidence in support of all essential aspects of their claim against Schwan's.

{¶ 24} A directed verdict is properly granted on the evidence presented when the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 50(A)(4). See, also, *Metro. Life Ins. Co. v. Huff* (1934), 128 Ohio St. 469, 191 N.E. 761. A motion for directed verdict should be overruled when from the evidence reasonable minds might reach different conclusions upon any question of fact properly at issue. *Miller v. Star Co.* (1937), 57 Ohio App. 485, 11 O.O. 272, 15 N.E.2d 151.

{¶ 25} The Tobiases contend that Schwan's violated R.C. 1345.02 and 1345.03 of the CSPA when it refused to accept payment for the dishonored checks and then assigned the matter over to M&M for collection purposes.

{¶ 26} R.C. 1345.02 states:

{¶ 27} "(A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

{¶ 28} R.C. 1345.03 states:

{¶ 29} "(A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

{¶ 30} Other than repeatedly asserting that the actions taken by Schwan's were unfair and unconscionable, the Tobiases fail to cite any case law or present other evidence that would tend to support the proposition that Schwan's acted in an unlawful manner. Moreover, the Tobiases cannot point to a specific section of the CSPA that encompasses the actions taken by Schwan's.

{¶ 31} The Tobiases repeatedly mention that they attempted to provide Schwan's with full payment on numerous occasions prior to the August 1998 assignment to M&M. However, the evidence demonstrates that the Tobiases attempted to pay off only the check dated May 28, 1998. Schwan's had sent them notice of its dishonor approximately a month after the check bounced. Mrs. Havens–Tobias testified that although Schwan's had not sent her notice of dishonor of the check drafted on May 15, 1998, she had received notice from her own bank that the check had been dishonored within ten days of the check being submitted for payment. In fact, the evidence presented at trial demonstrated that the Tobiases' bank sent them a notice of dishonor for both of the checks in question. Thus, it is disingenuous for the Tobiases to claim that they were not provided with notice that both checks had been dishonored.

{¶ 32} As Schwan's points out, it is undisputed that the Tobiases never tendered payment in full to Schwan's prior to Schwan's assignment of their debt to M&M even though they were clearly on notice that *both* of the checks had been dishonored. Schwan's decision to assign the debt to M&M was not illegal or otherwise actionable. Once a debt has been assigned to it, M&M is legally authorized to sue its debtors, provided it adheres to statutory procedures.

{¶ 33} The Tobiases have failed to offer any evidence that Schwan's violated the CSPA with respect to the assignment of the dishonored checks to M&M. Thus, we hold that the trial court was correct when it granted Schwan's motion for directed verdict at the close of the Tobiases' case in chief.

{¶ 34} The Tobiases' sole assignment of error is overruled.

{¶ 35} The judgment of the trial court is affirmed.

Judgment affirmed.

BROGAN, P.J., and YOUNG, J., concur.

FREDERICK N. YOUNG, J., sitting by assignment of the Chief Justice of the Supreme Court of Ohio.